**William Henry JAMES**

v.

**J. D. COX, Superintendent of the Virginia State Penitentiary.**

**Civ. A. No. 5999-R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Feb. 9, 1971.

Jack H. Spain, Jr., of Hunton, Williams, Gay, Powell & Gibson, for petitioner.

Vann H. Lefcoe, Asst. Atty. Gen., for respondent.

## MEMORANDUM

MERHIGE, District Judge.

William Henry James brought this habeas corpus action pro se. A central question is the constitutionality of procedures whereby the jurisdiction of the Richmond, Virginia, Juvenile and Domestic Relations Court over James was waived after a hearing at which James had no lawyer, and charges against him were certified to a court of record for trial. The issue of remedy, if the hearing was inadequate, arises as well. In addition, James asserts that he was not advised by trial counsel of his right to appeal after his convictions. In light of the decision of the Fourth Circuit in Kemplen v. Maryland, 428 F.2d 169 (4th Cir. 1970), the Court ordered an amended answer. Counsel was appointed for James, and the case has been submitted on briefs.

On November 27, 1962, James was found guilty after two nonjury trials in the Hustings Court of the City of Richmond, Part II, on charges of armed robbery. One indictment alleges that on September 22, 1962, James robbed one Dawes of goods and cash worth $27.00 while armed with a bottle. The second indictment charges a robbery on September 28 of one Rosa Fowlkes whereby James, armed with a rifle, took $30.00. On the first charge a ten year suspended sentence was imposed; on the second James received a fifteen year active sentence. These were his first penitentiary offenses in Virginia, but during his detention James twice escaped and was twice convicted of that offense on his recapture.

In 1966 James petitioned the state court of record wherein he was convicted for a writ of habeas corpus. Va.Code §§ 8–596 et seq. (Supp.1970). He attacked the juvenile court's certification hearing, alleging failure to notify his parents, to appoint for him a guardian ad litem, or to provide the assistance of counsel. Other contentions going to the effectiveness of trial counsel, in particular lack of advice as to his appeal rights, were made as well.

The state court heard the habeas case on April 13, 1967, and dismissed the writ. A writ of error was denied by the Virginia Supreme Court of Appeals on December 4, 1967.

Thereafter James sought relief here. The respondent has furnished this Court with the records of James' convictions and collateral proceedings.

James originally complained that his two robbery convictions are bad for failure to notify his foster parents of the date of the waiver hearing in juvenile court, for failure to advise him of his right to legal assistance at that hearing, and because the juvenile hearing was not "complete and fair."[1] In subsequent amended pleadings James contends that denial of counsel and inadequacy of notice at the certification hearing bring the case squarely within the rule of Kemplen v. Maryland, *supra*, and that he was not advised of his right to appeal after the convictions.

### EXHAUSTION OF AVAILABLE STATE REMEDIES

On his first conviction James received a suspended sentence. The state habeas court declined to entertain an attack on that term, relying on the rule of Peyton v. Williams, 206 Va. 595, 145 S.E.2d 147 (1965). By contrast, an attack on a suspended sentence may proceed in a federal forum, Wright v. Brinson, No. 13,679, mem. decis. (4th Cir. Oct. 30, 1969); Walker v. North Carolina, 372 F.2d 129 (4th Cir. 1967); cf. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

James contended before the Supreme Court of Appeals that he should be able to litigate the merits of his first conviction, but that court also refused to so rule.

Since that time the state legislature has extended opportunities for collateral attack to those under suspended sentence. Va.Code § 8–596(b) (3) (Supp. 1970). A forum is now open to James; in the usual case he should be required to seek relief there from his first conviction before this Court exercises its jur-

isdiction. Bailey v. Peyton, No. 13,577, mem. decis. (4th Cir. Aug. 14, 1969); Thacker v. Peyton, 419 F.2d 1377 (4th Cir. 1969).

■ In this instance, however, James' claims concerning his two convictions are substantially identical. Relief was denied him in the state courts from either conviction, and his attack on the second conviction was litigated on the merits. No indications that the Virginia Supreme Court of Appeals would depart today from its ruling on James' case in 1967 have been brought to this Court's attention. In these circumstances James is not compelled by the exhaustion doctrine to retry in the state courts a case that he has effectively already lost. Ralph v. Warden, 438 F.2d 786 (4th Cir. 1970); Rowe v. Peyton, 383 F.2d 709 (4th Cir. 1967), aff'd. Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L. Ed.2d 420 (1968); Evans v. Cunningham, 335 F.2d 491 (4th Cir. 1964). The state's statutory change does not compel a second attempt at exhaustion when the result is foreordained.

The respondent argues, however, on another ground for re-exhaustion of state remedies as to both convictions. He relies on recent rulings of our court of appeals, which seem to indicate that when an intervening change in the law might affect a state court's decision on petitioner's claim, the case must be presented anew in the state system before the exhaustion requirement is deemed complied with. Wright v. Maryland Penitentiary, 429 F.2d 1101 (4th Cir. 1970); James v. Copinger, 428 F.2d 235 (4th Cir. 1970). This Court is urged to require James to resubmit his claims as to the regularity of his certification to the state courts for reconsideration in the light of *Kemplen*. Cf. Jones v. North Carolina, No. 13,308, mem. decis. (4th Cir. Mar. 12, 1969) (petitioner must allow state courts to reconsider his claim in the light of Peyton v. Rowe, *supra*,

---

1. James' claims, not pressed in his briefs, concerning inadequacy of notice to his parents before certification and the completeness of the hearing would at most,

if grounds for federal relief at all, require no fuller remedy than that granted herein for other reasons. Accordingly their merits will not be explored.

and Word v. North Carolina, 406 F.2d 352 (4th Cir. 1969)).

*James* and *Wright*, however, do not require this petitioner to present the same arguments, buttressed by the same legal theories and precedents, to a state court which has already considered and rejected them merely because the Fourth Circuit has come to a different conclusion based on the same principles. In James' brief in the Supreme Court of Appeals both Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), were cited and relied upon. In September of 1967 the state court handed down Cradle v. Peyton, 208 Va. 243, 156 S.E.2d 874 (1967), and in December this petitioner was denied a writ of error. *Cradle* decided that *Gault's* application of constitutional guarantees to adjudications of delinquency did not require such safeguards, including counsel, in juvenile certification hearings. *Gault* was judged to be prospective only, and *Kent* was rejected as a constitutional ruling. *Kemplen* just reached divergent conclusions on similar precedents. On the key issue of the requirement of counsel *Kemplen* for the most part did not rely on intervening Supreme Court decisions. In considering the merits of this petitioner's claim based on *Kemplen*, this Court does not deny state supreme court the first chance, which interests of comity favor, to consider how recent developments in constitutional law bear on its system of criminal justice.

The re-exhaustion doctrine of *Wright* and *James* is confined expressly to instances when intervening Supreme Court decisions might affect a state court's decision. Only then is a state court compelled by precedent to conform its ruling to any intervening changes in the law:

> Even if this court could make a change in the law of the state this fact would not necessarily deny relief to the defendant. The case relied upon by the state, Stonebreaker v. Smyth, 163 F.2d 498 (4th Cir. 1947), involved a situation where the law had been changed by Supreme Court decisions which are necessarily binding upon the states. The *Thomas* case [Thomas v. Cunningham, 313 F.2d 934 (4 Cir. 1963)], was decided by this Court of Appeals. Though state courts may for policy reasons follow the decisions of the Court of Appeals whose circuit includes their state * * *, they are not obliged to do so. Owsley v. Peyton, 352 F.2d 804, 805 (4th Cir. 1965).

Re-exhaustion in the light of *Kemplen* might achieve for James only a reaffirmation by the state court of the position it established so recently in *Cradle*.

## COUNSEL AT THE CERTIFICATION HEARING

The respondent admits that James was not provided with counsel at his 1962 certification hearing.

He asserts, however that the proceeding differed from the usual Virginia certification hearing and constituted no more than the ordinary preliminary hearing for the reason that James' record of prior juvenile commitments brought him within a statute which directs certification save in certain exceptional cases:

> If a juvenile sixteen years of age or over, who has been previously committed to any juvenile training school in this State or any other state, is charged with an offense which, if committed by an adult, could be punished by death or confinement in the penitentiary, the case shall be certified for proper criminal proceedings, if probable cause be found, to the appropriate court of record having jurisdiction of such offense if committed by an adult, unless the juvenile and domestic relations court shall find and shall certify in its order that it is in the public interest for the matter to be disposed of therein. Va.Code § 16.1–176.1 (1950).

Before a person alleged to have committed a penitentiary offense when over fourteen and under eighteen years old may be exposed to the risks of adult trial, in the usual case, specific requirements

of Virginia statutes must be complied with. The juvenile and domestic relations court must make a full investigation "of the physical, mental, and social condition and personality of the child or minor and the facts and circumstances surrounding the violation of the law which is the cause of his being before the court." Va.Code § 16.1–176(b) (1960 Repl. vol.). After such inquiry and a hearing thereon, the juvenile court "may, in its discretion, retain jurisdiction or certify such child for proper criminal proceedings to the appropriate court of record * * *." Va.Code § 16.1–176 (1960 Repl. vol.).

An acceptable alternative procedure allows the court of record wherein a prosecution was initiated to perform its own similar investigation, after which the trial judge "in his discretion * * * may continue with the trial * * *." Va.Code § 16.1–175 (1960 Repl. vol.); Redmon v. Peyton, 420 F.2d 822 (4th Cir. 1969); Toran v. Peyton, 207 Va. 923, 153 S.E.2d 213 (1967); Tilton v. Commonwealth, 196 Va. 774, 85 S.E.2d 368 (1955). In either case the investigation is a prerequisite to the exercise of judicial discretion, informed and aided by the data compiled. Tilton v. Commonwealth, *supra*, 85 S.E.2d at 375.

The state supreme court has consistently insisted upon strict compliance with the statutes governing transfer for adult trial. A failure to conduct an investigation before discretion is exercised, a failure to provide a hearing in a juvenile court, and a failure to notify a child's parents of a juvenile court certification hearing or to appoint a guardian ad litem, all render a decision to try a defendant as an adult invalid and ineffective to oust the original jurisdiction of the juvenile and domestic relations court. Pruitt v. Peyton, 209 Va. 532, 165 S.E.2d 288 (1969); Gogley v. Peyton, 208 Va. 679, 160 S.E.2d 746 (1968); Gregory v. Peyton, 208 Va. 157, 156 S.E.2d 624 (1967); Toran v. Peyton, *supra*; Peyton v. French, 207 Va. 73, 147 S.E.2d 739 (1966); Tilton v. Commonwealth, *supra*. The alternative procedure used

in *Toran,* while it may substitute procedures prevailing in a court of record for some of the attributes of a juvenile court hearing, still requires a plenary investigation and the exercise of discretion informed thereby.

■ Because of the insistence of the Supreme Court of Appeals on adherence to these requirements, to the extent that noncompliance amounts not just to error but to a jurisdictional defect cognizable on collateral attack, this Court cannot construe § 16.1–176.1 to limit in any substantial way the depth of investigation or the range of judicial discretion exercised in the case of a juvenile who, like James, has been previously committed to a state training school.

Support for this reading of the law appears in Norwood v. City of Richmond, 203 Va. 886, 128 S.E.2d 425 (1962), a case involving appeals from decisions of juvenile courts to courts of record. Stating that the "general principles" of Tilton v. Commonwealth, *supra,* applied to the case, the Supreme Court of Appeals held that the statute requiring that the juvenile court's investigation report (similar to that required under § 16.1–176(b), but mandated by § 16.1–164) be transmitted to the court of record laid down a jurisdictional prerequisite. The supreme court might have held that another section, Va.Code § 16.1–177.1, authorized adult trial for a misdemeanor of a juvenile deemed incorrigible, and that the finding of incorrigibility might be made without plenary investigation. But the requirement of full inquiry was not relaxed, and the duty to make a fully informed and well founded finding of incorrigibility was placed upon the juvenile court. The opinion laid particular stress on the need to give full effect to the language of each statutory provision.

So here, the continued force of the statutory duty to make a full investigation and report and to exercise informed discretion, mandated by §§ 16.1–176 and 16.1–175, is not inconsistent with § 16.1–176.1. The latter statute at most shifts the burden of proof or lays stress on a

further factor to be considered. It does not divest the juvenile court of its discretion nor its duty to inform itself. For on what basis other than the plenary investigation can the juvenile court determine whether "it is in the public interest for the matter to be disposed of therein," Va.Code § 16.1–176.1 (1960 Repl. vol.)?

Such a construction also reconciles the alternative procedure under § 16.1–175 with that under § 16.1–176.1. For it would be anomalous if a juvenile court could certify under § 16.1–176.1 after a cursory determination, whereas a court of record could decide to continue with the trial only after the plenary inquiry under § 16.1–176(b).

■ Because a judicial hearing and the exercise of discretion based upon factfindings are contemplated under Virginia law, *Kemplen* applies, and James ought to have been afforded notice of the nature of his hearing and the opportunity to have a lawyer's assistance.

■ The Court rejects, based on its interpretation of § 16.1–176.1, the respondent's argument that those retained by the juvenile court under that section would be such exceptional cases that the probation officer would call them to the court's attention. The duty to find facts and the power to decide are as broad as in other cases, and a lawyer's aid is required just as much for the prevention of legal and factual error. If the respondent is understood to contend, based on § 16.1–176.1, that James has failed to show prejudice occasioned by lack of counsel, his argument fails for two reasons. Ordinarily when a defendant must pass without a lawyer's aid through a critical stage of a prosecution, when substantial rights may be gained or lost, prejudice is presumed to have occurred. Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). More-

over, it does seem noteworthy that James himself had first been committed to training school in 1956, having been charged with larceny, and that he subsequently was recommitted in 1958 and again in 1959 upon petitions charging larceny and breaking and entering. In spite of the presumption created by § 16.1–176.1, the concept of the second chance was a familiar one to the courts of the Commonwealth.

■ The Fourth Circuit of course has rejected the proposition that a probation officer could adequately represent the interests of a juvenile defendant in a certification hearing, Kemplen v. Maryland, *supra*, 428 F.2d 176. Lack of legal competence is not the sole reason such a substitute is insufficient; certainly most experienced juvenile probation officers would have a better grasp than a legal general practitioner of the dispositional choices available to the court and the traits which make an individual best suited for one or another treatment. Such an officer, even if appointed as guardian for a juvenile and even if himself a lawyer, would however be cast in a dual role which constrains advocacy. For as adviser to the court he is bound to take into account the public's interest as well as his client's and frame his advice accordingly. Free discussion with his client, under the cloak of the privilege, would be impossible. Without forceful representation the court might not be required to weigh all factors and justify its ruling. The decision process would become a collective one, and standards and responsibility would fade. Without a lawyer loyal, within the bounds of propriety, exclusively to him, the juvenile defendant is denied due process. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Goodson v. Peyton, 351 F.2d 905 (4th Cir. 1965).

No transcript of the waiver proceeding exists, but the habeas hearing showed that the waiver ruling was not considered a foregone conclusion. The pro-

bation officer commented on his recommendations to the court:

Q. And that included your conclusion that the Juvenile Court could not properly handle this boy?

A. No, I don't think it says that. I think it says here, gave some indication of what we had done, and during our course of working with the boy how we felt about the situation, but I don't think it says we had given up on recommending anything at all. (Tr. 9–10).

The officer took no active part as advocate, however (Tr. 11). If a showing of prejudice is necessary, it has been made.

■ The respondent admits that counsel was not provided at the waiver hearing, and that fact is clearly inferrable from the state habeas court's decision (Tr. 58–59). James' failure to request counsel does not amount to a waiver. Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The question of remedy for the constitutional violation therefore must be met.

### REMEDY

*Kemplen* directs district courts to formulate relief tailored to the procedures of the various states and the facts of each individual case, and within the range of remedies left open by Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). Kemplen's case was that of a man past the age of juvenile treatment whose invalid certification proceeding was conducted over five years before the Fourth Circuit ruled. Relief was limited to a "reconstruction in the Maryland courts, or failing that in the United States District

Court, of the circumstances bearing on the waiver question and a determination *nunc pro tunc* or what the juvenile court judge would probably have done in light of all the information then available that might reasonably have been proffered by competent counsel," in other words, "a *de novo* determination of whether, 'waiver was appropriate,' *Kent, supra,* [383 U.S.] at 565, 86 S.Ct. 1045," Kemplen v. Maryland, *supra,* 428 F.2d 178. If waiver were found appropriate, the conviction would stand; if not, it would be vacated. In the latter event any retrial would be barred because Kemplen's adult term was fully served and he was beyond the age of juvenile jurisdiction.

In *Kent* the Supreme Court mandated the district court to consider the possible necessity for further measures to remedy the defect in waiver proceedings. By its reference to Black v. United States, 122 U.S.App.D.C. 393, 355 F.2d 104 (1965), the Supreme Court recognized that at least under District of Columbia practice an inadequate waiver hearing might cause subsequent prejudice in an adult trial even if the decision to waive were found appropriate.[2]

This Court, sitting in habeas corpus, must "dispose of the matter as law and justice require," 28 U.S.C. § 2243, without the advantage of the flexible mandate which an appellate court may issue, a product of continuing institutional relationships within a single system. The situation calls for specificity concerning those subsequent procedures which will comply with federal law. The Court also has a duty, implicit in the habeas corpus statute, to prevent delay in final settlement of the dispute between James and the state.

---

2. "For example, properly conducted waiver proceedings on remand may disclose information, hitherto unknown to the District Court, which could alter (1) its determination whether to proceed as a Juvenile Court; (2) its choice among sentencing alternatives; (3) its or appellant's decision regarding appropriateness of raising the insanity defense. The

District Court might therefore find it necessary either to dismiss the indictment and proceed as a Juvenile Court, conduct a new sentencing hearing and determination, order a new trial, or enter such other corrective order as may be required to eliminate prejudice." Black v. United States, *supra,* 107 (footnotes omitted).

■ Therefore the Court, in granting the writ in this case, will not sanction retrials of this prisoner without a redetermination of the certification issue, nor will it sanction any retrial if it is found that certification was inappropriate. If the certification is found to have been made properly, however, retrials are not compelled and the sentences may stand. Cf. Jackson v. Denno, 378 U.S. 368, 393–396, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Nelson v. Peyton, 415 F.2d 1154 (4th Cir. 1969), cert. den., Cox v. Nelson, 397 U.S. 1007, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970).

However, consistent with *Black*, in the ultimate the state courts will still have the duty to render any possible error harmless. Under the state law the reports of the juvenile court are certified to the court of record in the event of transfer, Va.Code § 16.1–176(b) (1960 Repl. vol.), and the latter court may impose juvenile treatment rather than adult sentence, Va.Code § 16.1–177 (1960 Repl. vol.). For consideration of that alternative the court of record needs the full results of a proper juvenile hearing, Tilton v. Commonwealth, *supra*, 85 S.E.2d at 375–376. Therefore in this case if certification is upheld it still may remain for the court of record to grant a new trial or resentence the petitioner on the basis of any new facts brought out.

The Court is impelled to state in detail the requisite relief especially because the current law in the state system may dictate different relief. Jurisdictional defects other than denial of the right to counsel in certification proceedings have been held to void any adult trial; a new adult trial without a prior redetermination of the transfer issue has, however, been allowed when a defendant has passed beyond the juvenile court's age-limited jurisdiction. Pruitt v. Guerry, 210 Va. 268, 170 S.E.2d 1 (1969). Double jeopardy problems are thought not to arise because in theory all prior adult proceedings were void for lack of jurisdiction. See State v. Dehler, 257 Minn. 549, 102 N.W.2d 696 (1960), cited in Peyton v. French, *supra*, 147 S.E.2d 739 at 744.

In the face of recent rulings applying the double jeopardy clause to state prosecutions such reasoning is excessively artificial. Benton v. Maryland, 395 U.S. 784, 796–797, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

■ Existing double jeopardy law infers, from the decision to mount a collateral attack, a waiver of the right not to be retried for the same offense. Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). The waiver doctrine, however, does not extend to permit a retrial, otherwise barred by double jeopardy, on charges other than the conviction overturned. Price v. Georgia, *supra*. Nor does any retrial proceed without consideration of punishment exacted for the same offense. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 2089, 23 L.Ed.2d 656 (1969).

The Virginia statutes limit juvenile courts' jurisdiction not only by reference to a defendant's age at time of trial, Va. Code § 16.1–158(4) (1960 Repl. vol.), but also his age at the time an offense is alleged to have occurred, Va.Code § 16.-1–176(a) (1960 Repl. vol.).

In effect, if not intent, the law provides a chance for different, less rigorous treatment for certain persons whose immaturity at the time of the offense works not only to make special rehabilitation efforts more fitting but also decreases the moral blame attached to the act and the punishment flowing from it. "Juvenile status is, in effect, a basis upon which a youthful offender can plead diminished responsibility for his unlawful act." Kemplen v. Maryland, *supra*, 428 F.2d 175.

In Price v. Georgia, *supra*, double jeopardy principles barred retrial for murder after a first trial, on a murder indictment, had resulted in a manslaughter conviction and, implicitly, an acquittal on the greater charge. The Constitution would be violated, the court said, by sub-

jecting Price to the hazard of conviction on a charge he had already beaten. Here a retrial, after conviction and reversal, without the opportunity to litigate the certification issue, would create hazards even greater than Price faced. For, deprived of the possible verdict of guilty of the lesser offense of delinquency, James would go to trial a second time facing only the greater charge. *Price* permits retrial only on the charge originally faced.

■ The double jeopardy clause bars not only retrial after conviction or acquittal but also multiple punishment for the same offense, Ex parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873); this facet of the guaranty also prevents retrial without a certification hearing or after certification is denied. Implicit in James' action is an attack on the correctness of the certification made in 1962. If he is right, and had the juvenile court therefore retained jurisdiction at that time, James would long since have been released from detention, for the juvenile court may retain jurisdiction over him only until age 21. Va.Code § 16.1–159 (1960 Repl. vol.). The opportunity to relitigate certification is thus the chance to show that the only valid sentence has been fully served. Under North Carolina v. Pearce, *supra,* retrial may not proceed in disregard of time already spent in confinement under an invalid sentence. This credit doctrine would entitle James to his immediate release if he succeeds in defeating certification, for no one contends that he would be subject to adult trial for the same acts which gave rise to valid juvenile confinement. To deny him the chance to show what the result of the original proceeding, fairly conducted, would have been

would defeat the credit principle of *Pearce.*

Moreover, the practice of retrying defendants in James' position as adults, while extinguishing the possibility of amending the faults of the past, would impose an almost prohibitive cost on the effort to correct an acknowledged error. Retrial without redetermining certification, ironically, would place the one error of which James complains most strongly beyond hope of rectification. The only incentive to seek relief would be the hope that intervening delay might weaken the state's case. Delay, however, can work against the defendant as well. Such a policy would violate due process in burdening the right to correct errors, constitutional or otherwise. Patton v. North Carolina, 381 F.2d 636 (4th Cir. 1967), cert. den. 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 871 (1968); cf. North Carolina v. Pearce, *supra,* 395 U.S. 724–725, 89 S.Ct. 2080.

Any new certification hearing will have to comply with other constitutional requirements beside the right to counsel. So that appellate review by whatever means Virginia affords it can proceed effectively the court making the decision on certification must state its reasons in nonconclusory factual form, as was not done in this case. Kent v. United States, *supra.*

Furthermore, whatever court conducts a new inquiry on transfer [3] must be free to conclude that at present, over eight years after the first hearing, a redetermination of the issue is impossible because the requisite facts cannot be found. In Kemplen's case, where only five years intervened, the Fourth Circuit considered that redetermination was at least

---

3. It is not immediately apparent which court may conduct the contemplated certification proceeding. If the jurisdiction over James' person of the juvenile and domestic relations court has been lost by reason of his majority under Va.Code §§ 16.1–158(4), 16.1–159 (1960 Repl. Vol.), it appears that the hearing can nonetheless be conducted by a court of record under Va.Code § 16.1–175 (1960 Repl. Vol.), Redmon v. Peyton, 420 F.2d 822 (4th Cir. 1969). If no Virginia court can decide the issue, this Court shall assume the task.

worth a try. By contrast, in an earlier case involving twelve years' delay, this Court held that a former juvenile, improperly certified, was due his outright release. Redmon v. Peyton, 298 F. Supp. 1123 (E.D.Va.), rev'd, on other grounds, 420 F.2d 822 (4th Cir. 1969). At that time neither side argued the possibility of reenacting certification, and the Court rejected the state practice of adult retrial. Perhaps after some interval the task of re-enacting waiver should be presumed impossible. This Court cannot say that it would depart from its *Redmon* ruling in that respect.

The waiver decision of necessity turns largely on the accused's mental condition, considered in relation to a range of possible treatments; the Virginia law, for example, focuses inquiry on his "physical, mental, and social condition and personality," Va.Code § 16.1–176(b) (1960) Repl. vol.). Time can put the evanescent traits of an adolescent personality in flux beyond the reach of inquiry.

Courts have considered the much simpler issue of competence for trial to be very hard to resolve after the fact. In Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the Supreme Court commented on "the difficulty of retrospectively determining an accused's competence to stand trial," *Id.*, at 387, 86 S.Ct. at 843, and laid down a rule which would guaranty a "concurrent detemination" of that fact. Six years' delay was involved, but the case does not appear to depend on any particular interval, nor does it turn on facts showing a change in condition.

In *Robinson* a new plenary trial could achieve the concurrent ruling which the Court considered alone satisfactory. Here, however, time not only impairs retrieval of the past, it also has robbed us of any relevant present data to scrutinize and weigh. The issue of amenability to juvenile training and rehabilitation can be tried only with reference to a boy. The boy, James, is gone, and no one can assume that the man's characteristics are like those of the boy of 1962.

In Haziel v. United States, 131 U.S. App.D.C. 298, 404 F.2d 1275 (1968), the court of appeals remanded a case for redetermination of waiver, after a delay of much less time than this case involves, with this caveat:

The Juvenile Court may well decide that a hearing at this late date to determine whether, applying the standards we have set forth, waiver would have been proper more than two years ago is so artificial as to be meaningless. Certainly we cannot gainsay the difficulty of determining what rehabilitative strategy might then have worked, and whether resources were then available to implement any such strategy. If the Juvenile Court so concludes, the indictment must be dismissed. *Id.* at 1282.

The analogy of *Robinson* is close and persuasive. Nevertheless *Kemplen* appears to reject presumptions and favor attempting a retrospective decision. If five years' time (*Kemplen*) does not prevent such a ruling, this Court cannot say that eight years do; not, at least, before the state courts have had an opportunity to develop the facts as best they can with counsel's aid.

To repeat, however, if the retrospective effort to predict James' amenability to juvenile treatment and to decide other issues relating to certification as they would have been decided in 1962 cannot be carried out with the assurance that ordinarily underlies a hearing which measures up to the essentials of due process and fair treatment, the court undoubtedly will so state, and James' conviction would be vacated. An affirmance of the certification in no way will preclude a challenge of same by James either for want of evidentiary foundation or other inconsistency with the enunciated rule of law. In the face of current scarcity of articulated statements of the standards controlling the transfer decision,

this Court would be reluctant to decide that in no situation could the relevant eight-year-old facts be recreated. A full statement of the findings and conclusions supporting certification, if it occurs, would present the issue more squarely.[4]

▉ One further defect infects James' convictions. The petitioner alleges that his trial attorney was ineffective in failing to advise him of his right to appeal his convictions. The respondent admits that Nelson v. Peyton, *supra*, governs the case, and that a late appeal from both of his convictions should be granted if *Nelson* applies retroactively. That latter issue has been settled in favor of the petitioner. Shifflett v. Virginia, 433 F.2d 124 (4th Cir. 1970). Reexhaustion on this issue in the light of *Nelson* and *Shifflett* will not be required because those cases, like *Kemplen*, are not precedent binding upon the Virginia Supreme Court of Appeals. Significantly, the Fourth Circuit did not compel the petitioner Shifflett to seek relief anew in the state system.

Accordingly, the writ shall issue contingent upon the granting of a late appeal; if an appeal under constitutional standards cannot be granted, see Stokes v. Peyton, 437 F.2d 131 (4th Cir. 1970), a new trial, with opportunity to appeal, is necessary to validate James' detention. A new trial, however, can only be held after a re-enactment of the certification proceeding, as outlined in earlier portions of this opinion.

The writ shall issue on the conditions stated. To enable the petitioner to reapply to this Court without delay if further rulings on the implementation of the terms of the writ are required, the case shall be retained on the docket.

---

4. The court conducting the hearing may wish to draw analogies, in developing certification standards, from the similar provisions in the District of Columbia statutes. See Cradle v. Peyton, 208 Va. 243, 156 S.E.2d 874, 882 (1967) (Eggleston, C. J., dissenting); Haziel v. United States, 131 U.S.App.D.C. 298, 404 F.2d 1275 (1968); and Kent v. United States,

▉

## ORDER

## GRANTING WRIT OF HABEAS CORPUS, RETAINING CASE ON DOCKET, AND DIRECTING RETURN OF STATE RECORDS IF NO APPEAL IS NOTED

For the reasons stated in the memorandum of the Court this day filed, it is adjudged and ordered that:

1. The respondent shall release the petitioner from any further detention pursuant to his sentences for robbery imposed by the Hustings Court of the City of Richmond, Part II, on November 27, 1962.

2. The effect of this order is stayed for a period of sixty days, pending which the Commonwealth may commence steps, if they deem it advisable, to render the detention valid, which steps include the granting of leave to take belated appeals from the aforesaid convictions or new trials, and the granting of leave to relitigate the appropriateness of certification for trial as an adult and to reopen the judgments of conviction and sentence, if certification is ordered, to present such new evidence as may be unearthed in hearings on certification for reconsideration of the issues of guilt and sentence.

3. This case shall be retained on the docket. Accordingly counsel for the petitioner shall not now be relieved, but the Court expresses its appreciation for the unusually thorough investigation and cogent presentation which he has made in this case.

4. The Clerk is directed to retain the state court records for thirty days, and if no appeal is noted within such time, he shall return them to the appropriate repository.

---

130 U.S.App.D.C. 343, 401 F.2d 408 (1968). See also the discussions of the various theories governing the transfer decision in Note, Rights and Rehabilitation in the Juvenile Courts, 67 Colum.L. Rev. 281, 310–20 (1967), and in Cohen, The Standard of Proof in Juvenile Proceedings, 68 Mich.L.Rev. 567, 580–85 (1970).