Anthony NOGUEIRA, Petitioner,
Appellee,

v.

UNITED STATES of America,
Respondent, Appellant.

No. 81–1682.

United States Court of Appeals,
First Circuit.

Argued April 8, 1982.

Decided July 19, 1982.

John C. Doherty, Asst. U. S. Atty., Boston, Mass., with whom Mark L. Wolf, Deputy U. S. Atty., Boston, Mass., was on brief, for appellant.

Robert G. Bone, Boston, Mass., with whom Hill & Barlow, Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, FAIRCHILD,* and BREYER, Circuit Judges.

BREYER, Circuit Judge.

Anthony Nogueira, the appellee, was arrested in January 1974 and charged with assault with intent to commit murder and assault with a dangerous weapon. 18 U.S.C. § 113(a), (c). On September 23, 1974, he pleaded guilty to the former crime, the latter charge was dropped, and in early October he was sentenced to fifteen years imprisonment. After serving six and one-half years, he was released on parole.

In 1979 Nogueira began to attack his conviction collaterally under 28 U.S.C. § 2255. After counsel was appointed to represent him, he continued to pursue several claims, among them that the government had failed to follow the provisions of certain amendments to the Juvenile Justice and Delinquency Act, 18 U.S.C. §§ 5031 et seq.—amendments that came into effect on September 7, 1974, sixteen days before he pleaded guilty. As relevant, the amendments state that one who, like Nogueira, was a "juvenile" at the time the offense was committed

> shall not be proceeded against in any court of the United States unless the Attorney General ... certifies ... that the juvenile court or other appropriate court of a state ... does not have jurisdiction or refuses to assume jurisdiction ... or ... does not have available programs and services adequate for the needs of juveniles....

A second requirement, more pertinent to his case, is that a juvenile who meets the first requirement and is to be tried in federal court must be tried under the provisions of the Juvenile Justice Act with the following exception: a juvenile who is sixteen years of age or older and who is charged with a particularly serious crime may be tried as an adult but only if

> prosecution on the basis of the alleged act ... [is] begun by motion to transfer [for adult criminal prosecution] of the Attorney General in the appropriate district court of the United States, if such court finds, after hearing, such transfer would be in the interest of justice.

18 U.S.C. § 5032. (See appendix.)

In this case, Nogueira agrees that prosecution in a state court would not have been appropriate, for the state lacked jurisdiction

---

* Of the Seventh Circuit, sitting by designation.

over his offense. He claims, however, that he should have been tried under the Juvenile Justice Act and that he could not have been tried as an adult because the Attorney General made no "transfer" motion as the statute requires. The district court agreed with Nogueira, and, after finding that holding a belated *nunc pro tunc* transfer hearing (to see what the result would have been in 1974) was impossible, the court vacated Nogueira's conviction and ordered the indictment dismissed. The government appeals.

As we view this case, it is unusual in three respects. First, the appellee has completed his prison term. Second, the major substantive legal question involves the effective date (September 7, 1974) of the 1974 amendments. Do those amendments apply to persons indicted, but not tried, before September 7, 1974? Two courts held, in 1975, that they do. *United States v. Mechem*, 509 F.2d 1193 (10th Cir. 1975); *United States v. Azevedo*, 394 F.Supp. 852 (D.Hawaii 1975). The parties agree that since then the question has not been raised. To uphold the government would likely require our setting a new, and contrary, precedent on a legal question that seems unlikely to arise again. Third, as far as we can tell, the government seems not to have properly raised in the court below *any* of the arguments that it now makes. There are, of course, strong precedents to the effect that, with certain exceptions, "an issue not presented to the trial court cannot be raised for the first time on appeal." *Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 894 (1st Cir. 1979); *Roto-Lith, Ltd. v. F. P. Bartlett & Co.*, 297 F.2d 497, 500 (1st Cir. 1962). These precedents reflect sound principles of procedure and judicial administration. *Hormel v. Helvering*, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1940). The government seems hard pressed to explain why an exception should be made in this instance.

These special features lead us to view the government's argument as an invitation to create an unsound procedural precedent, governing many future cases, for the sake of what the government views as a sounder

substantive precedent with apparently limited future application. Not surprisingly, given this view of the case, we reject the invitation and affirm the district court's decision.

## I

Why we believe it fair to hold the government to the claims it made below (and unfair to expand our consideration of the issues) will emerge from a recitation of the procedural history of this case, as we have found it in the record: Nogueira filed a *pro se* complaint in this case on November 20, 1979, when he was still in custody. He amended it on December 4, 1979. A year later, on February 25, 1981, the district court ordered the government to file a responsive pleading. In its response the government argued that Nogueira's claim had been previously adjudicated, that it was untimely, and that a transfer to the Massachusetts courts would have been impossible since the crime was committed on federal property.

A hearing was held on May 4, 1981. The government counsel at the hearing had not yet seen the record in Nogueira's case, nor was he aware of the effective date of the 1974 amendments at issue. The court expressed concern about the delays in the case and noted Nogueira's right to a prompt disposition. It also allowed the government time to file a brief, and it appointed counsel for Nogueira. One week later, in a two-page memorandum, the government simply stated its conclusion that the 1974 amendments did not apply "retroactively" to those charged prior to September 7, 1974.

On June 1, 1981, Nogueira filed an extensive brief bringing to the court's attention the cases holding that the 1974 amendments applied to one charged, but not tried, before September 7, 1974. *United States v. Mechem, supra; United States v. Azevedo, supra.* At a second hearing, on June 3, the government counsel stated he had not read Nogueira's brief, which was "apparently ... fouled up in the delivery in the U.S. Attorney's Office." After looking, in coun-

sel's words, "very briefly at the brief," counsel stated that *Mechem* and *Azevedo* might be distinguishable, as involving trials, not guilty pleas. The court denied the government's request for more time, given the year and one-half that had already elapsed, declared that the two cases were not distinguishable, that § 5032 therefore applied, and that Nogueira had not received the protection that section offered. The court asked for further briefing as to remedy.

On June 9, 1981, the government filed a motion requesting a transfer hearing *nunc pro tunc*. It might have objected, after this opportunity for further study, to appellee's view of the law. But it did not do so. Rather, it apparently adopted Nogueira's position on the law and stated explicitly:

> The government accepts the exposition of the relevant law as to the applicability of "new" Section 5032 to the instant case and further agrees that it has been fairly presented by the petitioner in his memorandum.

The government went on to state,

> Inasmuch as this Court has already vacated the petitioner's judgment of the conviction, the Government is left only with the possibility of pursuing a nunc pro tunc transfer hearing. Upon advice from the Chief, Appellate Division, Criminal Division, U.S. Department of Justice in Washington, D.C. the Government elects to pursue the only option left to it by the Court's decision in view of the extremely serious nature of the underlying criminal act. The Government feels that such a transfer hearing would not be an exercise in futility and that it will likely serve to settle this matter once and for all.

The government's statement that the court had "already" vacated Nogueira's conviction is incorrect. The purpose of the "*nunc pro tunc*" transfer hearing was to determine whether or not it ought to do so. The hearing would have attempted to apply § 5032 to Nogueira on the basis of facts as they were known in 1974 with the object of deciding whether or not he would then have been tried as an adult or as a juvenile. If

the former, his conviction would stand; if the latter, it would be vacated. *See Kent v. United States*, 383 U.S. 541, 564–65, 86 S.Ct. 1045, 1058–59, 16 L.Ed.2d 84 (1966); *James v. Cox*, 323 F.Supp. 15, 21–22 (E.D.Va.1971). Accordingly, the court granted the government's motion to hold such a hearing.

Nogueira then moved for summary judgment on the transfer question. He noted that the question would be determined in accordance with a set of factors listed in § 5032. (*See* appendix.) He argued that it was impossible to evaluate these factors after so many years had passed. In particular, it would be difficult, if not impossible, to construct a "psychological picture" of Nogueira at the time of trial. And Nogueira attached an affidavit to this effect from a psychiatrist.

The court held a third hearing on August 20, 1981. At this hearing the government, again changing its position, agreed that a *nunc pro tunc* determination on the transfer question could not be made. Government counsel stated, "it would be close to a meaningless exercise." The court then gave the government yet another chance to object to Nogueira's position on the law including the applicability of § 5032 to Nogueira's case. The judge pointed out to the government that the logical consequence of the government's position was to vacate Nogueira's conviction. Government counsel replied:

> I think it is a matter that we are in opposition but powerless to to anything about. Our objection is philosophical. I would agree that the case law clearly runs in favor of [Nogueira's] position.

The court went on as follows:

> THE COURT: Have you had an opportunity to read the memorandum that he has filed and the cases that he has cited?
>
> COUNSEL FOR THE GOVERNMENT: Yes, I have, your Honor.
>
> THE COURT: Well, I wanted to tell you that I am inclined to agree with him, but would at least consider, if you wished, a request for time within which to file an opposing memorandum of law, if you wish to file this opposition. I gather that

you have not had time to prepare an opposing memorandum.

COUNSEL FOR THE GOVERNMENT: No.

THE COURT: It is only that I want to give the government every fair opportunity, because I am inclined, from first reading, to agree with the proposition urged by Mr. Bone on behalf of Mr. Nogueira.

COUNSEL FOR THE GOVERNMENT: I find myself in respect to that, your Honor, of two minds. I agree that Mr. Bone's memorandum is quite persuasive, and I guess probably my other mind, other facet of this, would be I just had a feeling there was a showing of good faith by the Court and by the prosecution in this matter, and it is sincerely regrettable that it wound up in this particular posture, in view of the seriousness of the offense and other background matters, but I do not request at this time, your Honor, any time to file a further memorandum.

THE COURT: Well, that is what I wanted to know, because that means I will have to go on the basis of what I have got.

What the court had "got" at that time was an objection by the government to the result on "philosophical" grounds, a sentence or two uttered a few weeks before that *Mechem* and *Azevedo* might be distinguished by distinguishing a "post September 7, 1974, guilty plea" from a "post September 7, 1974, trial," and a statement in a motion by the government that it "accepts the exposition of the relevant law as to the applicability of 'new' § 5032 to the instant case and further agrees that it has been fairly presented by the petitioner in his memorandum." Consequently, the district court vacated Nogueira's conviction.

## II

■ In this circuit, in civil cases,

It is by now axiomatic that an issue not presented to the trial court cannot be raised for the first time on appeal. *Roto-Lith, Ltd. v. F. P. Bartlett & Co.*, 297 F.2d 497, 500 (1st Cir. 1962); *Demelle v. Interstate Commerce Commission*, 219 F.2d 619, 621 (1st Cir. 1955). Although this rule is not absolute, it is relaxed only "in horrendous cases where a gross miscarriage of justice would occur." *Newark Morning Ledger Co. v. United States*, 539 F.2d 929, 932 (3d Cir. 1976); *Hormel v. Helvering*, 312 U.S. 552, 556–57, 61 S.Ct. 719, [721–22] 85 L.Ed. 1037 (1940). In addition, the new ground must be "so compelling as virtually to insure appellant's success." *Dobb v. Baker*, 505 F.2d 1041, 1044 (1st Cir. 1974).

*Johnston v. Holiday Inns, Inc.*, 595 F.2d at 894.

■ A collateral attack on a conviction by means of a petition for habeas corpus is a civil case. *Ex parte Tom Tong*, 108 U.S. 556, 559, 2 S.Ct. 871, 872, 27 L.Ed. 826 (1883). But a case like this one, under 28 U.S.C. § 2255, has a rather different nature. Although the remedy under § 2255 is "identical in scope to the federal habeas corpus," *Davis v. United States*, 417 U.S. 333, 343, 94 S.Ct. 2298, 2303, 41 L.Ed.2d 109 (1974), "procedurally it is 'a further step in the movant's criminal case.'" *United States v. Gordon*, 634 F.2d 638, 639 (1st Cir. 1980). *See United States v. Frady*, —— U.S. ——, ——, 102 S.Ct. 1584, 1601, 71 L.Ed.2d 816 (1982) (Justice Brennan, dissenting). However, the question needs here no further analysis for the basic principle that appellate courts will not ordinarily consider theories presented for the first time on appeal applies in criminal, as well as civil, cases. *United States v. Parrilla Bonilla*, 648 F.2d 1373, 1386 (1st Cir. 1981); *United States v. Sachs*, 679 F.2d 1015, 1018–19 (1st Cir. 1982).

■ We can find no major "miscarriage of justice" likely to occur here by holding the government to the arguments it made below, for the defendant has already served his sentence. We find no significant threat to society in the judgment of the district court. The arguments that the government makes on this score—that Nogueira's crime was serious, that he was seventeen years old at the time, etc.—are relevant to wheth-

er he would have been tried as an adult in 1974 even under the new 1974 amendments. But, this is the very issue as to which the government rejected a *nunc pro tunc* hearing on the ground that it would be a "meaningless exercise."

The arguments that the government seeks to raise in its brief include the following: It claims that whatever error was committed in failing to apply the "new" § 5032 to Nogueira was not sufficiently serious an error to fall within the purview of 28 U.S.C. § 2255, the statute providing the basis for Nogueira's collateral attack. *See United States v. Frady,* —— U.S. at ——, 102 S.Ct. at 1593; *United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979). It claims that Nogueira waived his right to object by pleading guilty. And, it claims that Nogueira's claim is now barred because he failed to raise it prior to trial. Fed.R. Crim.P. 12(b)(2). We note that these arguments are by no means *obviously* correct for Nogueira, at least plausibly, contends that failure to apply "new" § 5032 was a "jurisdictional" defect, which he is now free to raise. *See United States v. Milestone,* 626 F.2d 264, 267 n.2 (3d Cir.), *cert. denied,* 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980). Regardless of the merits of these arguments, however, there is not the slightest reference to them in the proceedings below, and we shall not consider them for the first time on appeal.

■ The government also repeats an argument to which it referred briefly below (though later abandoned), namely that *Mechem* and *Azevedo* involved *trials* that took place after September 7, 1974, while this case involves a *guilty plea* that was made and accepted after September 7, 1974. We fail to see the significance of this distinction. Either Congress intended the new amendments to apply to those who had been indicted but not tried by September 7, or it did not. There is nothing in the language of the Act, in its purposes, or in its history to suggest that it would apply to some of these defendants, but not to others, depending upon how they happened to plead after September 7.

■ Finally, at oral argument, the government, in response to questions, for the first time embraced the argument that *Mechem* and *Azevedo* might have been wrongly decided—that Congress did not intend the new amendments to apply to *anyone* who had been indicted prior to September 7, 1974, the amendments' effective date, even if the trial had not yet been held. Needless to say, we find the government's position far from *obviously* correct. In light of the humane purposes of the new amendments, the *Mechem* and *Azevedo* decisions, allowing their application to defendants not yet tried, make sense as an interpretation of congressional intent. Of course, those courts (and Congress) might have felt differently had they considered the possibility that years later convicted persons might raise failure to apply the new amendments as a "technical" basis for setting aside their convictions. Nonetheless, they are likely not to have felt all that differently, once they also recognized the availability of legal weapons ordinarily sufficient to stop any serious "technical" failure of justice (such as the *nunc pro tunc* transfer hearing, and, perhaps, the legal arguments that the government makes for the first time on this appeal). Be that as it may, we are unwilling to explore in this appeal this complex line of argument aimed at creating divided circuits on a legal question whose future importance is uncertain. There is, after all, value in maintaining a nationally coherent view of the law—certainly enough value to warrant our turning aside in this case a challenge to existing precedent that was raised for the first time at oral argument on appeal, and which is neither obviously correct nor which carries the force of obvious justice behind it.

For these reasons, the decision of the district court is

*Affirmed.*

## APPENDIX
18 U.S.C. § 5032.

A juvenile alleged to have committed an act of juvenile delinquency shall not be

proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to an appropriate district court of the United States that the juvenile court or other appropriate court of a State (1) does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, or (2) does not have available programs and services adequate for the needs of juveniles.

If the Attorney General does not so certify, such juvenile shall be surrendered to the appropriate legal authorities of such State.

If an alleged juvenile delinquent is not surrendered to the authorities of a State or the District of Columbia pursuant to this section, any proceedings against him shall be in an appropriate district court of the United States. For such purposes, the court may be convened at any time and place within the district, in chambers or otherwise. The Attorney General shall proceed by information, and no criminal prosecution shall be instituted for the alleged act of juvenile delinquency except as provided below.

A juvenile who is alleged to have committed an act of juvenile delinquency and who is not surrendered to State authorities shall be proceeded against under this chapter unless he has requested in writing upon advice of counsel to be proceeded against as an adult, except that, with respect to a juvenile sixteen years and older alleged to have committed an act after his sixteenth birthday which if committed by an adult would be a felony punishable by a maximum penalty of ten years imprisonment or more, life imprisonment, or death, criminal prosecution on the basis of the alleged act may be begun by motion to transfer of the Attorney General in the appropriate district court of the United States, if such court finds, after hearing, such transfer would be in the interest of justice.

Evidence of the following factors shall be considered, and findings with regard to each factor shall be made in the record, in assessing whether a transfer would be in the interest of justice: the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.

Reasonable notice of the transfer hearing shall be given to the juvenile, his parents, guardian, or custodian and to his counsel. The juvenile shall be assisted by counsel during the transfer hearing, and at every other critical stage of the proceedings.

Once a juvenile has entered a plea of guilty or the proceeding has reached the stage that evidence has begun to be taken with respect to a crime or an alleged act of juvenile delinquency subsequent criminal prosecution or juvenile proceedings based upon such alleged act of delinquency shall be barred.

Statements made by a juvenile prior to or during a transfer hearing under this section shall not be admissible at subsequent criminal prosecutions.