## Richmond

ALLEN CARROLL PRUITT v. C. C. PEYTON, SUPERINTENDENT OF THE
VIRGINIA STATE PENITENTIARY.

January 20, 1969.

Record No. 6803.

Present, Eggleston, C. J., Snead, I'Anson, Carrico, Gordon and Harrison, JJ.

*F. Lee Bailey* (Mass.) (*Harold Goodman; Charles M. Burnim* (Mass.), on brief), for plaintiff in error.

*Reno S. Harp, III, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

On May 25, 1964, Allen Carroll Pruitt, the petitioner, filed in the court below a petition for a writ of habeas corpus against C. C. Peyton, Superintendent of the Virginia State Penitentiary, the respondent. In his petition, Pruitt attacked the validity of his conviction by the lower court on August 31, 1953, of robbery and of murder in the first degree and prayed that the two life sentences imposed upon him for those offenses be declared null and void.

Counsel was appointed to represent the petitioner in connection with his petition for a writ of habeas corpus, and a plenary hearing was held on the allegations of the petition and of a supplement thereto filed with leave of court. A final order was entered denying the writ and dismissing the petition. The petitioner was granted a writ of error.

The record shows that on November 21, 1952, Harry J. Ganly, the operator of a newsstand in the city of Norfolk, was robbed and murdered in his place of business. The Norfolk police "had information" linking the petitioner to the crimes, and they also learned that he was in custody in Spartanburg, South Carolina.

The petitioner, who was born June 3, 1935, and was then seventeen years of age, was taken into custody by the Spartanburg police on November 27, 1952, on a charge of being an escapee from a state industrial school in South Carolina. On November 28, 1952, two Norfolk police officers journeyed to Spartanburg, questioned the petitioner about the Norfolk crimes, and then transported him to Norfolk on November 30, 1952.

On December 1, 1952, a petition was filed in juvenile court charging the petitioner with the offenses involving the theft from and the death of Ganly. On the same date, a hearing was held, and the judge of the juvenile court ordered that the petitioner "be sent to Grand Jury."

Indictments were returned against the petitioner by the grand jury, and counsel was appointed to represent him. His family later retained a South Carolina attorney to assist the appointed counsel.

On August 25, 1953, the petitioner appeared in court with his counsel and entered pleas of guilty to the indictments pending against him. On August 31, the court convicted the petitioner of robbery and of murder in the first degree and imposed the sentences of which he now complains.

Although the petitioner has assigned a number of errors to the action of the trial court in denying him a writ of habeas corpus, the

controlling question on this appeal arises from the petitioner's contention that no guardian ad litem was appointed to represent him at the hearing in juvenile court.

It is clear, from the record, that at the juvenile court hearing, the parents of the petitioner were not present and he was not represented by counsel. This leads to the petitioner's contention that the juvenile court was required by Code, § 16-172.39 (now Code, § 16.1-173) to appoint a probation officer or an attorney at law as guardian ad litem to represent him at the hearing.

The trial judge, in dismissing the petition for a writ of habeas corpus, relied upon the fact that the records of the juvenile court showed that Willie Pruitt, an uncle of the petitioner, was present and testified at the juvenile court hearing. The trial judge noted that the uncle, who was a resident of Portsmouth, Virginia, was "the last person with whom [the petitioner] had resided" in the Norfolk area and held that the uncle was the "natural guardian" of the petitioner. The court ruled that there was, therefore, "no further requirement on the Juvenile Court to appoint a competent Attorney at Law or a Probation Officer as a guardian ad litem."

There is nothing in the record, however, to support the conclusion that Willie Pruitt was the guardian of the petitioner or otherwise acting in place of the latter's parents within the meaning of the juvenile statutes. In fact, the record does not even support the finding that the uncle was "the last person with whom [the petitioner] had resided" in the Norfolk area prior to the juvenile court hearing. The record shows that although the petitioner resided with his uncle when he first arrived in the Norfolk area in April, 1952, he thereafter resided alone in Norfolk for a period of time and then with a brother in Portsmouth until the time of the alleged commission of the Ganly offenses in November, 1952. There is no suggestion in the record that the brother was present at the juvenile court hearing.

Under these circumstances, the juvenile court should have appointed a guardian ad litem to represent the petitioner and if it did not, then the hearing in that court was violative of Code, § 16-172.39 (now Code, § 16.1-173).

The respondent contends that the burden was upon the petitioner to prove that no guardian ad litem was appointed and that the petitioner failed to carry that burden. The respondent relies upon the testimony of the clerk of the juvenile court, at the habeas corpus hearing, to the effect that in 1952, the juvenile court maintained

"few records" and, from this, the respondent argues that such records would not have reflected "whether or not a guardian ad litem had been appointed."

█ The difficulty with the respondent's position is that the juvenile court did enter an order in this case, sending the petitioner on for action of the grand jury. That order, which is an exhibit in the record, was on a printed form which provided a blank space for the entry of the name of the person appointed guardian ad litem. Following the blank space was the printed language, "probation officer—a discrete and competent attorney-at-law—has been appointed as guardian ad litem to represent the interests of said child or minor and . . . said guardian ad litem was present at said hearing and represented said child or minor."

In the order entered by the juvenile court, the blank space which was provided for the name of the person appointed guardian ad litem was not filled in and the printed language quoted above was crossed out. In the absence of proof to the contrary, the order of the juvenile court was sufficient to show that no guardian ad litem was appointed to represent the petitioner.

█ In *Peyton v. French*, 207 Va. 73, 147 S. E. 2d 739 (1966), the juvenile court, in a situation similar to the one before us, failed to appoint a guardian ad litem to represent the interests of a juvenile offender. We held that such failure was violative of Code, § 16.1-173 (formerly Code, § 16-172.39) and jurisdictional, thus rendering void the subsequent proceedings in the court of record. See also *Gogley v. Peyton*, 208 Va. 679, 160 S. E. 2d 746 (1968); *Gregory v. Peyton*, 208 Va. 157, 156 S. E. 2d 624 (1967).

The holding in the *French* case requires a like result here. We hold, accordingly, that because of the failure of the juvenile court to appoint a guardian ad litem to represent the interests of the petitioner at the hearing in that court, the subsequent proceedings in the corporation court and the convictions and sentences of the petitioner were void. The petitioner was entitled, therefore, to the award of the writ of habeas corpus.

Since we have reached this conclusion, it is not necessary to discuss the remaining questions raised by the assignments of error.

█ The petitioner has, of course, long since the termination of the original proceedings below, attained his majority and so cannot be retried as a juvenile. He should, therefore, be tried on new indict-

ments if the Commonwealth proceeds further against him. *Peyton* v. *French, supra,* 207 Va., at 80, 147 S. E. 2d, at 743-744.

For the error in refusing to award the writ of habeas corpus, we reverse the judgment of the trial court.

*Reversed.*