John Henry **REDMON**

v.

**C. C. PEYTON, Superintendent of the Virginia State Penitentiary.**

Civ. A. No. 5047.

United States District Court
E. D. Virginia,
Richmond Division.

April 30, 1969.

John B. Gilmer, Richmond, Va., for petitioner.

Reno S. Harp, III, Asst. Atty. Gen. of Virginia, Richmond, Va., for respondent.

## MEMORANDUM

MERHIGE, District Judge.

Redmon filed a petition in this Court for a writ of habeas corpus December 5, 1966; was granted leave to proceed in forma pauperis; and his petition was filed. The respondent answered and moved to dismiss.

In that petition, Redmon sought to attack the validity of a conviction as a recidivist (third offender) and the subsequent revocation of six years suspension of the ten year sentence for the recidivist conviction. Redmon also sought to attack the validity of the underlying convictions to that recidivist conviction. He also sought to attack the validity of a fully served conviction as a recidivist (second offender).

This Court dismissed the petition. The petitioner appealed to the United States Court of Appeals for the Fourth Circuit. That court, by order of July 23, 1968, affirmed this court's dismissal of the allegations going to the recidivist hearings themselves as being without merit, but reversed and remanded as to the allegations going to the underlying convictions upon which the recidivist conviction as a third offender was based, the Circuit Court determining that these convictions, even though fully served, still constituted a "present burden" upon the petitioner.

This Court appointed counsel and set the matter for plenary hearing on April 7, 1969. Counsel for respondent answered and moved to dismiss on the grounds that the recidivist conviction to be served in the future could at that date be attacked under new State legislative procedure. This Court denied the motion on the grounds that exhaustion is a rule of comity and not of law, Ross v. Middlebrooks, 188 F.2d 308 (9th Cir. 1951), and on the strength of the mandate of the Court of Appeals.

Respondent filed a further motion on February 25, 1969, seeking that petitioner's allegation running to a previously served sentence imposed by the Circuit Court of Mathews County in

1960, be dismissed on the grounds that the Circuit Court of Richmond did not rely upon this conviction in convicting Redmon of being a third offender under the State's recidivist law.

█ This motion was taken under advisement by the Court until the plenary hearing. Inasmuch as this conviction may result in future recidivist proceedings, and as evidence was heard in reference to the allegations of irregularity concerning this conviction at the plenary hearing, the Court feels the ends of justice will be best served by denying the respondent's motion to dismiss aforementioned on the grounds that exhaustion is a rule of comity and not of law, *Ross*, supra.

█ As to the Mathews conviction of 1960, Redmon complains of ineffective representation of counsel in that counsel was formally appointed the same day as the trial. The evidence at the plenary hearing, however, negated any error or prejudice to petitioner in that his attorney was actually appointed 11 days prior to the trial, interviewed the petitioner, and thoroughly investigated the case with the police and discussed the plea with the court, seeking to have any sentence imposed run concurrent with a 1960 conviction in Gloucester County. Accordingly, the allegations of irregularity in the 1960 Mathews County conviction are without merit, and the petition for a writ of habeas corpus in reference to this conviction will be dismissed.

This leaves the Court with two felony judgments to be considered, both entered by the Circuit Court of Gloucester County, one being a conviction of April 2, 1957 while petitioner was a juvenile, and the other one entered January 26, 1960.

In chronologically reversed order, the petitioner complains that he was denied his right to appeal from the judgment of January 26, 1960, for the unauthorized use of an automobile and subsequent two year sentence, on a plea of not guilty.

The testimony of his attorney, Mr. Jones, at the hearing, revealed the following:

Q. Did he make known to you at any time that he wanted you to do something further on his behalf?

A. I can't recall too well. I think that he may have said, "If you can do anything further for me, please do it," but I can't * * * it has been nearly two years. He did not * * * Excuse me.

Q. Finish explaining.

A. He did not overtly ask for an appeal. I don't think the boy knew what an appeal was at the time.

Q. And this discussion happened after the trial, is that correct?

A. Yes, sir.

The record thus shows that at the conclusion of the trial, Redmon communicated his desire for his attorney to do something else. Under the rule laid down in Coleman v. Peyton, Mem. dec. No. 12,714 (4th Cir. Nov. 4, 1968), and Allred v. Peyton, 385 F.2d 360 (4th Cir. 1967), "Petitioner must show that he desired an appeal and that he communicated this desire to his attorney or to the court, and that having communicated his desire for an appeal, he was not informed of his right to appointed counsel * *. He is not held to any particular form of words in showing his attorney or the court that he desires an appeal, nor is he expected to know the formal requirements for taking an appeal, but he is expected to know, if he is dissatisfied with his trial, that he must communicate this dissatisfaction to someone."

█ The Court finds from the evidence presented at the plenary hearing that Redmon did in fact make his dissatisfaction known, and affirmatively take steps to have his attorney do something more so as to meet the test of *Coleman* and *Allred,* supra, and that the failure of his attorney to so perfect an appeal or advise him of the requirements, did amount to a denial of the right to appeal from the conviction. Accordingly, petitioner's petition for a writ of habeas corpus as to this conviction will be granted and the judgment of conviction will be vacated.

In the original petition, Redmon sought to attack the validity of his conviction of April 2, 1957, on several grounds which were subsequently dropped. At the hearing, on advice of counsel, Redmon alleged that his conviction was a nullity in that he was never validly certified to the Circuit Court from the Juvenile Court pursuant to Va. Code Ann. § 16.1–176, and the Circuit Court action therefore was null and void for lack of jurisdiction. While this lack was not originally asserted and ordinarily would not be considered under the grounds of failure to exhaust, no such complaint was made by the State at the time of the hearing, and in fact the State, prior to the hearing, took evidence on the question and introduced evidence at the plenary hearing and legal argument concerning this ground which the Court deems to be one of paramount importance.

The Supreme Court of Appeals for the State of Virginia has expressly held that the Juvenile Code section in question was jurisdictional and that unless adhered to, jurisdiction lay exclusively in the Juvenile Court, and any subsequent action by a Circuit Court of record was null and void. See Peyton v. French, 207 Va. 73, 147 S.E.2d 739 (1966). See also, Pruitt v. C. C. Peyton, Sup't, etc., 209 Va. 532, 165 S.E.2d 288 (1969).

The first requisite is that a hearing be held to determine if the juvenile shall be certified to the Circuit Court to be treated as an adult.

The evidence at the hearing clearly showed that no such hearing was ever had in the Juvenile Court of Gloucester County. Rather, the Circuit Court took jurisdiction and used an investigative report from an earlier juvenile hearing to determine if Redmon should be tried as an adult.

There is one certain instance where a Circuit Court may properly perform the certification function of the Juvenile Court, and this is pursuant to Va.Code Ann. § 16.1–175. This section provides that "if during the pendency of a crim-inal or quasi-criminal proceeding against any person in any other court it shall be ascertained that the person was under the age of eighteen years at the time of committing the alleged offense, such court shall forthwith transfer the case * * * to the juvenile court * * * provided if such is pending in a court of record, the judge thereof, in his discretion upon completion of an investigation as prescribed in § 16.1–176(b), may continue with the trial thereof."

The important phraseology in the statute is not the discretion of the court to retain jurisdiction, but rather the time when the court of record is even able to exercise that discretion. The first sentence of the section spells this point out explicitly, "if during, * * * it shall be ascertained * * *."

The Court finds from the evidence before this Court at the plenary hearing, that the Circuit Court of Gloucester County was familiar with Redmon, and knew that he was a juvenile before he was ever brought before it.

■■ The reasonable interpretation of the statutory purpose of § 16.1–175 was to provide a means whereby the court of record could continue the process of justice in an orderly procedure when, after the court had already started action under the erroneous assumption that the defendant was an adult, it could, if necessary, make the certification without completely stopping all action, assigning the case to the Juvenile Court, and then having to start the entire procedure anew. Not to so provide the Circuit Court with this procedure could lead to a situation with injurious effect to the juvenile. However, it was not the purpose of the legislature to provide a means whereby the strictures of the Juvenile Code and Juvenile Courts' jurisdiction could be easily evaded or side-stepped in an arbitrary or wilful manner. See Tilton v. Commonwealth, 196 Va. 774, 85 S.E.2d 368 (1955).

■ In the instant case, the Circuit Court knew in advance of the juvenile status of the petitioner, he being 16 at

the time. It was not information that was discovered after the court began action. Therefore, § 16.1–175 does not operate so as to give validity to the Circuit Court proceedings in April of 1957, and as § 16.1–176 was not adhered to, the Circuit Court of Gloucester County lacked jurisdiction to try Redmon and his conviction is null and void.

This Court's belief as to the correctness of its ruling in this regard stems from the emphatic language of Mr. Justice I'Anson of the Supreme Court of Appeals of Virginia who, in the *French* case, supra, emphatically stated that the very language of the Statute's going to the purpose and intent of the Juvenile and Domestic Relations Court law results in a mandatory command that the "statutes be followed before criminal jurisdiction in a proper court of record comes into being."

This Court takes judicial notice of the fact that in cases where such a similar irregularity in the certification proceedings has occurred, the Supreme Court of Appeals of Virginia has allowed the State to re-try the petitioner upon new indictments as an adult where at the time of reversing the original conviction the petitioner had reached his majority. See *French*, supra; Pruitt v. Peyton, supra. The Supreme Court of Appeals of Virginia takes notice of the fact that after reaching majority, there is no procedure provided under Virginia law to treat him within the Juvenile Code. *French*, supra.

Under the Virginia statutory juvenile scheme (as in all other such jurisdictions) the juvenile is protected against the consequences of adult conviction such as the loss of civil rights, the use of adjudication against him in subsequent proceedings, and disqualification for public employment. The loss of this shelter and transfer of the matter to the appropriate court for proceedings against him as an adult, is as potentially important to the petitioner as the difference between 5 years and a death sentence. Surely the immense difference in the potential effect of certification upon his entire future if an adult conviction results, and the right to the shelter of the State from such difference of effect, is as basic a substantive right as can be conceived. The transfer of jurisdiction from the Juvenile Court is thus an irretrievable loss of substantive rights and procedural rights.

The Circuit Court, under law, derives its jurisdiction in cases of this nature through the action taken in the Juvenile Court. The highest court in Virginia has held that a violation of the mandatory provisions of the Juvenile and Domestic Relations Court law, which results, in effect, in transposing an accused from boyhood to manhood by certifying him for Grand Jury action and trial as an adult by virtue of violating the mandatory provisions of the Juvenile and Domestic Relations Court law and the requirements of due process, is a denial of petitioner's Constitutional guarantee under Section 8 of the Constitution of Virginia. Section 8 of Virginia's Constitution, which is akin to the Constitution of the United States, includes the phrase "He shall not be deprived of life or liberty, except by the law of the land * * *." See also, Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

■ Due process requires that all juveniles be treated alike, just as much as it requires that all adults be treated alike. To allow the State, regardless of the motives of its officers, to deprive Redmon of the same rights accorded other juveniles, and then subsequently permit him to be tried as an adult simply because of the passage of time, is to compound the original deprivation of his Constitutional rights as required under the due process clause of the 14th Amendment to the Constitution. Regardless of the well-intentioned motives of all the judicial officers involved, this Court cannot help but believe that due process must, under all circumstances, encompass the requirement that all persons, rich or poor, young or old, be accorded equal treatment.

 Since the petitioner cannot be returned to the position in which he was when his Constitutional rights were violated, it is this Court's opinion that the State must forego a re-trial upon new indictments on the charge involved in the void conviction of April 2, 1957.

Inasmuch as the January 1960 conviction and the April 1957 conviction are the underlying bases for the third offender recidivist conviction, it must necessarily fall as null and void.

Accordingly, the petition will be granted as to the 1957 conviction and the third offender recidivist conviction of January 27, 1965, and the subsequent revocation of the suspended portion of December 7, 1965.

An appropriate order consistent with this opinion will be entered.