Present:  Carrico, C.J., Compton,[1] Lacy, Hassell, Keenan, Koontz, and
Kinser, JJ.

DAVID ALLEN MOORE

                               OPINION BY
v.  Record No. 990665     JUSTICE LAWRENCE L. KOONTZ, JR.
                                     March 3, 2000

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

The primary focus of this appeal is a determination of the scope of our recent decision in Commonwealth v. Baker, 258 Va. 1, 516 S.E.2d 219 (1999)(per curiam), aff'g Baker v. Commonwealth, 28 Va. App. 306, 504 S.E.2d 394 (1998).[2]  As in that case, the question is whether the trial court, here the Circuit Court of Loudoun County (the circuit court), lacked jurisdiction to try David Allen Moore, a juvenile, as an adult on indictments charging him with two counts of murder and the use of a firearm in the commission of those murders. Specifically, the question is whether the failure of the Loudoun

--------

[1]Justice Compton participated in the hearing and decision of this case prior to the effective date of his retirement on February 2, 2000.

[2]Within this opinion, we will refer to the decision of the Court of Appeals as "Baker I" and our per curiam affirmance of that decision as "Baker II."

County Juvenile and Domestic Relations District Court (the juvenile court) to give notice of the initiation of juvenile court proceedings against Moore, required by the then applicable provisions of Code §§ 16.1-263 and 16.1-264, to his biological father rendered the subsequent transfer of jurisdiction by the juvenile court to the circuit court ineffectual and, thus, the convictions of Moore void.

The pertinent facts are not in dispute. Moore was born on May 13, 1977. In December 1994, four petitions were filed in the juvenile court charging that Moore committed the above noted criminal offenses in January 1994. On each petition in the space provided on the pre-printed form for the name and address of the juvenile's mother, "Lillie Ruth Moore — Arlington County Jail" was listed. A similar space regarding the juvenile's father was left blank. The juvenile court judge made no certification on the record that the identity of Moore's father was not reasonably ascertainable and no affidavit to that effect was made by Moore's mother. However, in a social history report later filed in the juvenile court by a probation counselor of that court, Moore's father was identified as "Vernon Butts" and his location was identified as "Tampa, Florida (exact address unknown)." Moore's mother was never married to Butts.[3]

---

[3]The social history report also recited that Moore's mother "dated" Moore's father for three months and that she terminated

Moore and his mother were summoned to appear in the juvenile court regarding the allegations in the petitions.  Moore's father was not summoned and did not voluntarily appear.

Throughout the juvenile court proceedings Moore was held in custody and was represented by two court-appointed attorneys. According to court records, Moore's mother did not appear at any of the hearings in the juvenile court.  Ultimately, following a transfer hearing at which Moore and his attorneys were present, the juvenile court by order entered on June 14, 1995, found probable cause that Moore had committed the criminal offenses charged in the petitions and certified Moore to stand trial as an adult in the circuit court for those offenses.

Moore was indicted for those offenses on July 28, 1995, found guilty of each by a jury on February 6, 1997, and sentenced to a term of imprisonment of two life sentences and eight years on December 19, 1997.  Throughout the proceedings, both in the juvenile court and the

the relationship because he denied that he was the father of her expected child after she became pregnant.  The record also reflects that on May 10, 1996, Moore's counsel made an oral motion in the circuit court that Moore be permitted to attend the funeral of his father, "Vernon Butts," scheduled for the next day.

3

circuit court, Moore raised no objection to the failure of the juvenile court to give notice of the initiation of the juvenile court proceedings to his father as required by the then applicable provisions of Code §§ 16.1-263 and 16.1-264.

On appeal to the Court of Appeals, Moore challenged his convictions on other grounds, but did not raise the issue of the failure to give notice to his father.  The Court of Appeals affirmed Moore's convictions in an unpublished opinion.  Moore v. Commonwealth, Record No. 0063-98-4 (February 23, 1999).  We awarded Moore this appeal limited to the issue of the effect upon Moore's convictions of the failure to give notice to his father.

We begin our analysis in this appeal by noting the significant similarities and distinctions between the facts and circumstances involved in Moore's case and those in Baker's case.  In both cases the criminal acts were committed and the proceedings against the juveniles in the appropriate juvenile courts occurred when Code §§ 16.1-263 and 16.1-264 required notice of the initiation of juvenile court proceedings to the "parents" of the juvenile.  In neither case were there certifications on the record by the juvenile court judge that the identity of one of the juvenile's parents was not reasonably ascertainable as provided in the exception to required parental notice under Code § 16.1-263(E).  In both cases the juveniles' biological fathers were not given notice of the initiation of the juvenile court proceedings, or the subsequent transfer

4

hearings, and they did not voluntarily appear at any of the hearings conducted in the juvenile court.

Under these circumstances, the Court of Appeals held in Baker I that the then applicable provisions of Code §§ 16.1-263 and 16.1-264 required notice of the initiation of juvenile court proceedings to both parents.[4]  Moreover, the Court of Appeals held that "[b]ecause the notice of the initiation of juvenile proceedings was not properly served on [Baker's biological father], the transfer of jurisdiction [to the circuit court] was ineffectual and the subsequent convictions [of the juvenile in the circuit court] are void."  Baker I, 28 Va. App. at 315, 504 S.E.2d at 399.  In reaching this judgment, the Court of Appeals held that the provisions of these statutes are "mandatory" and "jurisdictional."  Id. at 310, 504 S.E.2d at 396.

Thereafter, for the reasons stated in the opinion of the Court of Appeals, we affirmed that Court's judgment voiding Baker's

_____

[4]At the time Baker was transferred to the circuit court in 1996, Code § 16.1-269.1 was the applicable transfer statute.  When Moore was transferred to the circuit court former Code § 16.1-269 was applied by the juvenile court because the offenses for which Moore was charged were committed prior to the repeal of Code § 16.1-269 in 1994.

5

convictions.[5] Baker II, 258 Va. at 2, 516 S.E.2d at 220. It is then readily apparent that in the absence of any significant distinction between the two cases, our decision in Baker II would control in Moore's case without further analysis.

However, there are significant distinctions between the facts and circumstances in Baker II and those in Moore's case. In Baker I, the Court of Appeals noted that "[p]rior to the indictment, Baker filed a motion to dismiss the charges or remand the case to juvenile court and alleged that the juvenile court lacked jurisdiction to transfer the case to the circuit court because the juvenile court failed to comply with the notice requirements of Code §§ 16.1-263 and 16.1-264." 28 Va. App. at 309, 504 S.E.2d at 396. Thus, Baker preserved the issue of this defect in the juvenile court proceedings and was not subject to the waiver of objection to the "jurisdiction" of the circuit court provided for in Code § 16.1-269.6(E), a statute we will address subsequently in this opinion. In contrast, as noted above, Moore raised no such objection to the defect in the juvenile court proceedings either in the juvenile court, the circuit court, or

_____

[5]We also noted that effective July 1, 1999, Code § 16.1-263 was amended to provide for notice of the juvenile court proceedings to "'at least one parent.'" Id.

6

the Court of Appeals.  Accordingly, it is in this context that the scope of our decision in Baker II must be viewed.  More specifically, we must now decide, applying the applicable versions of the pertinent statutes, whether the failure to give the statutory notice of the initiation of juvenile court proceedings to a juvenile's parent is a defect in the proceedings such that it is not subject to waiver by the juvenile either in the juvenile court or the circuit court.

We continue our analysis by emphasizing the necessary distinction to be drawn here between the power of a court to adjudicate a specified class of cases, commonly known as "subject matter jurisdiction," and the authority of a court to exercise that power in a particular case.  Subject matter jurisdiction is granted by constitution or statute.  Humphreys v. Commonwealth, 186 Va. 765, 772, 43 S.E.2d 890, 894 (1947).  It cannot be waived and any judgment rendered without it is void ab initio.  Moreover, lack of subject matter jurisdiction "may be raised at any time, in any manner, before any court, or by the court itself."  Id., 43 S.E.2d at 893.  In contrast, "[a] court's authority to exercise its subject matter jurisdiction over a case may be restricted by a failure to comply with statutory requirements that are mandatory in nature and, thus, are prerequisite to a court's lawful exercise of that jurisdiction."  Moore v. Commonwealth, 259 Va. ___, ___, ___ S.E.2d ___, ___ (2000) (decided today) (holding that the failure to give statutorily required notice of initiation of juvenile court proceeding to

7

juvenile's parent is a defect in those proceedings cured by Code § 16.1-269.1(E)).[6]

The statute that provides subject matter jurisdiction to the juvenile and domestic relations district courts is Code § 16.1-241, which gives these courts "exclusive original jurisdiction" over "all cases, matters and proceedings involving" a juvenile who is alleged to be delinquent.[7] The jurisdiction of these courts is invoked and the proceedings therein commenced by the filing of a petition. Code § 16.1-260(A). After the petition is filed, Code §§ 16.1-263 and 16.1-264 mandate parental notice of the initiation of the proceedings

---

[6]The defendant in Moore is not the same defendant in the present case.

[7]This code section has been amended from time to time and was amended in 1996 specifically to limit the jurisdiction of the juvenile courts to conducting a preliminary hearing to determine probable cause in any case in which the juvenile, age 14 or older, is alleged to have committed certain violent juvenile felonies, including those charged against Moore in the present case. This limiting provision, however, was not applicable at the time of the proceedings in the juvenile court against Moore.

8

by the issuance of a summons.  The subsequent transfer of such a case by the juvenile court to the circuit court is provided for under Code § 16.1-269.1.  Former Code § 16.1-269, applied by the juvenile court in Moore's case, also provided for this transfer to the circuit court.  While there are considerable distinctions between the statutes, when viewed in the limited context that they both provide the statutory means by which a circuit court acquires the authority to exercise its subject matter jurisdiction over a class of offenses committed by a juvenile that would otherwise fall within the exclusive original subject matter jurisdiction of the juvenile court, we need not address all those distinctions here.  The significant and pertinent distinction, however, is the applicability of Code § 16.1-269.1(E), another statute we also will subsequently address in this opinion.

There is no question that when the statutory requirements related to the juvenile court proceedings are followed, a circuit court's subject matter jurisdiction over the class of offenses committed by a juvenile that are at issue here is invoked.  See Code §§ 17.1-513 and 19.2-239.  It is the unique statutory framework whereby a juvenile court and in turn a circuit court acquire the authority to exercise their subject matter jurisdiction that is at issue here and was at issue in a number of our prior cases.  In this regard, we have held that the statutory requirement of parental notice of the initiation of proceedings in the juvenile court, under

9

various former versions of what is now Code § 16.1-263, are mandatory in nature and limit a court's rightful exercise of its subject matter jurisdiction.  See, e.g., Gregory v. Peyton, 208 Va. 157, 159-60, 156 S.E.2d 624, 626 (1967); Peyton v. French, 207 Va. 73, 80, 147 S.E.2d 739, 743 (1966).

In French, where the juvenile court failed to give parental notice of the initiation of the proceedings in that court, we stated that "the failure of the juvenile court to comply with the applicable statutes rendered the circuit court proceedings void."  Id. at 80, 147 S.E.2d at 743 (emphasis added).  Moreover, and pertinent to the present appeal, in Jones v. Commonwealth, 213 Va. 425, 192 S.E.2d 775 (1972), we recognized that there had been various amendments to the notice requirements concerning juvenile court proceedings, but we stressed that "the requirement that the parents of an infant defendant charged with a crime have notification of the time and place of his trial and an opportunity to be present has remained constant."  Id. at 428, 192 S.E.2d at 777.  In contrast to these cases, we have distinguished specific statutory requirements and held that certain defects in the juvenile court proceedings were merely procedural and, thus, were subject to cure or waiver.  See, e.g., Turner v. Commonwealth, 216 Va. 666, 670, 222 S.E.2d 517, 520 (1976)(failure to provide written notice to parents cured by actual presence of juvenile's parents at transfer hearing).

10

Guided by these principles, we turn to the specific circumstances in Moore's case.  The notice provisions contained in the applicable version of Code § 16.1-263 require that "[a]fter a petition has been filed, the court shall direct the issuance of summonses . . . to the parents . . . ."  This requirement, although no longer containing earlier language prohibiting the hearing to proceed without the notice, is otherwise virtually identical to that considered by this Court from the time we decided <u>French</u> to the time we decided <u>Baker II</u>.  Based on this Court's unswerving adherence to the nature of this notice requirement to parents, this requirement as applied to Moore's case was "mandatory."  Thus, because it failed to comply with this mandatory requirement, the juvenile court lacked authority to exercise its subject matter jurisdiction over the offenses charged against Moore.[8]  It then remains only to be

_____

[8]In addition, we note that Code § 16.1-269.1(E) provides that "[a]n indictment in the circuit court cures any error or defect in any proceeding held in the juvenile court except with respect to the juvenile's age."  This provision, however, applies only to offenses committed on or after July 1, 1996, and therefore does not apply to Moore's case.  <u>See</u> 1996 Va. Acts. ch. 755, cl. 7 and ch. 914, cl.7.

11

determined whether Code § 16.1-269.6(E) is applicable in the present case and operates to waive or cure this defect in the juvenile court proceedings such that the circuit court had the necessary authority to exercise its subject matter jurisdiction to try Moore as an adult for the offenses set forth in the indictments because Moore raised no objection to the jurisdiction of the circuit court.

Code § 16.1-269.6(E) became effective on July 1, 1994. As previously noted the offenses for which Moore was charged occurred in January 1994 and the petitions charging him with these offenses were filed in the juvenile court in December 1994. He was subsequently indicted in the circuit court for these offenses on July 28, 1995, and arraigned in December 1996. Accordingly, we will assume, without deciding, that Code § 16.1-269.6(E) is applicable to Moore's case.

Code § 16.1-269.6(E) provides that: "Any objection to the jurisdiction of the circuit court <u>pursuant to this article</u> shall be waived if not made before arraignment." (Emphasis added.) The plain language of this section clearly manifests legislative intent that

---

This provision was also not applicable in <u>Baker II</u> because the offenses at issue there were committed before July 1, 1996. However, the provision now acts to cure the defect in the juvenile court proceedings at issue in Moore's case. <u>See</u> <u>Moore</u>, 259 Va. at ___, ___ S.E.2d at ___.

12

any defect in the transfer proceedings conducted in the juvenile court as provided in Article 7 is waived such that the circuit court acquires the authority to exercise its subject matter jurisdiction over the offenses charged against the juvenile unless the juvenile raises an objection based on a defect in the juvenile court transfer hearing prior to arraignment in the circuit court. Beyond question, the legislature has the authority to provide for a waiver of a defect in the transfer proceeding in this manner.

The Commonwealth's reliance on Code § 16.1-269.6(E) in Moore's case, however, is misplaced. By its express terms this statute does not purport to cure or waive defects in the initiation of the juvenile court proceedings. Code § 16.1-269.1(E), enacted subsequent to this statute, addresses those defects. Code § 16.1-269.6(E), by contrast, does not address the requirements of Code §§ 16.1-263 and 16.1-264, but only addresses the waiver of a defect in the transfer hearing conducted in the juvenile court. Cf. Burfoot v. Commonwealth, 23 Va. App. 38, 51, 473 S.E.2d 724, 731 (1996). Thus, Code § 16.1-269.6(E) does not operate to cure or waive the initial defect in the juvenile court proceedings where, as here, the juvenile court fails to give the parental notice of the initiation of juvenile court proceedings as statutorily mandated.

In short, the juvenile court in Moore's case never acquired the authority to exercise its jurisdiction to conduct the transfer hearing that resulted in the transfer of Moore's case to the circuit

13

court.  Accordingly, the circuit court never acquired the authority to exercise its jurisdiction to try Moore for the criminal offenses charged in the indictments, and Moore's convictions in the circuit court are void. This result is consistent with our holdings in French and Baker II.

For these reasons, we will reverse the judgment of the Court of Appeals and remand this case with directions that the case be remanded to the trial court for a new trial if the Commonwealth be so advised.  Since Moore has now reached his majority and cannot be retried as a juvenile, if the Commonwealth elects to retry him, Moore should be tried on new indictments.  French, 207 Va. at 80, 147 S.E.2d at 743-44.

Reversed and remanded.

JUSTICE COMPTON, dissenting.

In my opinion, the defendant waived the defect in the juvenile court proceeding.

Code § 16.1-269.6(E) plainly provides:  "Any objection to the jurisdiction of the circuit court pursuant to this article shall be waived if not made before arraignment."

Baker did not involve interpretation of this statute.  See Commonwealth v. Baker, 258 Va. 1, 516 S.E.2d 219 (1999) (per curiam), aff'g Baker v. Commonwealth, 28 Va. App. 306, 504 S.E.2d 394 (1998).

14

As I understand the majority's reaction to this statute, waiver does not apply here because application of the statute is restricted to proceedings described in Article 7 of Chapter 11 of Title 16.1 of the Code, which does not include statutes dealing with the initiation of the juvenile court proceedings.

As I interpret Code § 16.1-269.6(E), it plainly speaks globally to the jurisdiction of the circuit court. Acquisition of this jurisdiction involves one continuous process and results from the interplay of many statutes not codified within Article 7, including the Article 5 notice provisions of former Code §§ 16.1-263 and -264. In other words, a circuit court's jurisdiction is acquired not only by the transfer proceeding mentioned in Article 7 but also by the initiation requirements mentioned in Article 5.

Therefore, I would affirm the judgment of the Court of Appeals, which affirmed the defendant's convictions.

JUSTICE KINSER, with whom JUSTICE LACY joins, dissenting.

Because I believe that David Allen Moore has defaulted the alleged error under Rules 5:17(c) and 5:25, I would affirm his convictions.

Before discussing my reasons for this conclusion, it is important to note, as does the majority, that the instant case comes to us in an entirely different procedural posture than did

15

the case of Baker v. Commonwealth, 258 Va. 1, 516 S.E.2d 219 (1999) (per curiam). Although Moore alleges the same error as the one addressed in Baker, namely the failure to give notice of the initiation of juvenile proceedings to the juvenile's father in accordance with former Code § 16.1-263 (1994)[9] and present Code § 16.1-264 (1994),[10] Moore failed to raise an objection with regard to the issue either before the juvenile and domestic relations district court (juvenile court) or the circuit court. To the contrary, the juvenile court judge stated in her notes, which are part of the record in this appeal, that neither party presented any question regarding the sufficiency of the notice required under former Code § 16.1-263 and present Code § 16.1-264. The juvenile court then found that notice as prescribed in those statutes had been given. Likewise, Moore did not assign error to this alleged defect in his petition for appeal to the Court of Appeals. Instead, he raised the question whether the circuit court lacked jurisdiction to try him as an adult because

---

[9] This section was amended by the General Assembly in 1999 to require the summons of only one of a juvenile's parents, while the former section required notice to both parents.

[10] Code § 16.1-264 remains the same as it was in 1994.

16

the juvenile court did not comply with the notice provisions of former Code § 16.1-263 and present Code § 16.1-264 for the first time before this Court.[11]

In contrast to Moore, the defendant in Baker preserved his objection to the error by filing a motion to dismiss before he was indicted. Baker also timely raised the issue on appeal. Thus, we did not have to determine in Baker whether the error was one that deprived the juvenile court of its subject matter jurisdiction and thus could be raised at any time.[12] Consequently, this Court's decision in Baker is not dispositive

_____

[11] Moore has not asked that his failure to object to the lack of notice be considered under the "ends of justice" exception to the requirements of Rule 5:25.

[12] A court's subject matter jurisdiction is the only type of jurisdiction that cannot be waived. Morrison v. Bestler, 239 Va. 166, 169, 387 S.E.2d 753, 755 (1990). Thus, an error, other than one addressing a court's lack of subject matter jurisdiction, is deemed waived if not timely raised. See Rules 5:17(c) and 5:25.

of the present question whether Moore has defaulted the alleged error.

In analyzing this question, I begin with a series of this Court's decisions in which we permitted defendants, in the context of habeas corpus proceedings, to collaterally attack their prior convictions because certain mandatory procedures were not followed in their juvenile court proceedings. In Peyton v. French, 207 Va. 73, 147 S.E.2d 739 (1966), the juvenile court "certified" felony charges against the juvenile to the circuit court so the juvenile could be tried as an adult, but the juvenile court did so without notice to the juvenile or his parents, without the presence of even one of his parents, without the appointment of a guardian ad litem for the juvenile, and without a hearing. Id. at 75, 147 S.E.2d at 740. At that time, former Code § 16.1-172 (1960) provided that "[i]n no case shall the hearing proceed until the parent or parents of the child, if residing within the State, . . . have been notified of such."[13] If none of the persons required to be notified of the hearing were present in court at the time of the hearing, former

---

[13] Neither French nor any of its progeny presented an issue concerning the non-residency of a juvenile's parent. Thus, that portion of the statute is not relevant to my analysis.

18

Code § 16.1-173 (1960) required the juvenile court to appoint a guardian ad litem to represent the interests of the juvenile. That appointment had to occur before the hearing could proceed, and the guardian ad litem had to be present at the hearing.  Id. at 76, 147 S.E.2d at 741.  This Court said the complete failure to comply with the statutory requirements was a violation of due process and concluded that compliance with those provisions was necessary "before criminal jurisdiction in a proper court of record comes into being."  Id. at 79, 147 S.E.2d at 743.

In Gregory v. Peyton, 208 Va. 157, 156 S.E.2d 624 (1967), we again confronted the failure to appoint a guardian ad litem for the juvenile when neither of his parents was present at the hearing.  Id. at 158, 156 S.E.2d 624.  There, we reaffirmed our holding in French that the failure "to comply with the applicable provisions of the [j]uvenile . . . [l]aw rendered the subsequent proceeding in the criminal court void."  Id. at 159-60, 156 S.E.2d at 625.  This Court addressed the same issue in Gogley v. Peyton, 208 Va. 679, 160 S.E.2d 746 (1968), where we applied our decision in French retrospectively so as to void the juvenile's convictions.  208 Va. at 680, 160 S.E.2d at 747.  Again, in Pruitt v. Peyton, 209 Va. 532, 165 S.E.2d 288 (1969), we held that the failure to appoint a guardian ad litem for a juvenile after neither of his parents appeared at his juvenile

19

court hearing was "jurisdictional," and consequently rendered the juvenile's convictions void. Id. at 535, 165 S.E.2d at 290.

While the errors in the above cases were raised by the respective defendants in petitions for writs of habeas corpus, in Jones v. Commonwealth, 213 Va. 425, 192 S.E.2d 775 (1972), which was a direct appeal of the defendant's conviction as a recidivist, we also permitted Jones to collaterally attack his underlying juvenile conviction. We did so because the official records of the juvenile court were silent as to whether either of Jones' parents had been notified of his juvenile court proceeding, whether either was present at the hearing, and whether a guardian ad litem had been appointed to represent him at the juvenile court proceeding. Id. at 427, 192 S.E.2d at 777. Again relying on our decision in French, we held that the failure to give notice to Jones' parents and to appoint a guardian ad litem in the absence of a parent deprived the trial court of jurisdiction. Id. at 428, 192 S.E.2d at 777.

However, this Court has not always held that the failure to comply with mandatory provisions regarding juvenile proceedings deprived the juvenile court of its jurisdiction. For example, in Turner v. Commonwealth, 216 Va. 666, 222 S.E.2d 517 (1976), we decided that a mandatory requirement that "[n]otice in writing of the time, place and purpose of [a transfer] hearing" be provided "to the child and his parents . . . or attorney" was

not jurisdictional.  Id. at 667, 222 S.E.2d at 518.  In that case, the juvenile, his father, and his attorney all received oral notice of the hearing.[14]  Id. at 668, 222 S.E.2d at 519.  We concluded that the juvenile court's failure to comply with the requirement of written notice was "a mere procedural defect," which could not be challenged as error if not timely raised. Id. at 669-70, 222 S.E.2d at 520.

More recently, this Court decided Jackson v. Commonwealth, 255 Va. 625, 499 S.E.2d 538 (1998), cert. denied, 525 U.S. 1067 (1999).  There, in the context of determining whether certain transfer proceedings were conducted appropriately, we held that statutory language providing that "[t]he circuit court shall, within a reasonable time after receipt of the case from the juvenile court (i) examine all . . . papers, reports and orders . . .," established a "jurisdictional" requirement that such a transfer review take place, but merely a "procedural" rule for the time of review.  Id. at 642-43, 499 S.E.2d at 549. (Emphasis added.)

---

[14] The juvenile's parents and attorney were present at the hearing, but it is not clear if the mother had previously been notified of the hearing.

21

Upon reviewing the decisions in French and its progeny, it becomes evident that this Court addressed "jurisdictional" defects in those cases.  However, we never clearly specified that we were considering subject matter jurisdictional defects.  Nevertheless, the question of the juvenile court's subject matter jurisdiction was implicated because we allowed the defendants in French, Gregory, Gogley, Pruitt, and Jones to collaterally attack their juvenile convictions.  In those decisions, this Court recognized that the statutes at issue imposed mandatory requirements regarding juvenile proceedings and that those requirements were coupled with limiting language that prohibited the court from going forward with a hearing until the requirements were fulfilled.  Therefore, the Court held that compliance with those mandatory requirements was a prerequisite for the juvenile court's exercise of its subject matter jurisdiction.

I believe that there were two provisions in effect when the juvenile proceedings at issue in French and its progeny were conducted that rendered the defects in those cases "jurisdictional."  The first one was the requirement that "[i]n no case shall the hearing proceed until the parent or parents of

22

the child . . . have been notified . . . ."[15]  Former Code

§ 16.1-172 (1960).[16]  (Emphasis added).  The second provision was

former Code § 16.1-173 (1960), requiring that when no person

required to be notified under former Code § 16.1-172 (1960) was

present in court for the hearing, the "<u>court</u> <u>shall</u>, <u>before</u>

_____

[15] That provision also incorporated the requirement that

summons issue to "all proper or necessary parties" upon the

issuance of a petition against a juvenile, former Code § 16.1-

166 (1960), which now appears in different form in Code § 16.1-

263 (1999).

[16] At the time of Pruitt's juvenile proceedings, this

language was codified at former Code § 16-172.38 (1952), and at

the time of Jones' juvenile proceedings, the pertinent

provision, former Code § 63-273 (R.P. 1948), provided that "[i]n

no case shall the trial proceed until the parents or parent of

such child . . . have been duly notified . . . ."  <u>Jones</u>, 213

Va. at 427, 192 S.E.2d at 777.

23

proceeding <u>with</u> <u>the</u> <u>hearing</u>, appoint a . . . guardian ad litem to represent the interests of the child."[17]  (Emphasis added).[18]

In 1973, after this Court's decisions in <u>French</u> and its progeny, and before the commission of the crimes at issue in <u>Turner</u>, the General Assembly enacted former Code § 16.1-176.2 (1973), now Code § 16.1-270 (1999).  That section allows a juvenile, prior to a transfer hearing and with the consent of counsel, to waive the jurisdiction of the juvenile court and have the case transferred to the appropriate circuit court.

_____

[17] At the time of Pruitt's juvenile proceedings, former Code § 16-172.39 (1952) provided for the appointment of a guardian ad litem when those persons to whom notice needed to be given as prescribed in former Code § 16-172.38 (1952) were not present. At the time of the juvenile proceedings involving Jones, former Code §§ 63-269 and -272 (R.P. 1948) required that the juvenile's parents be summonsed, and if at least one of them did not appear, that a guardian ad litem be appointed for the juvenile.

[18] In some of the <u>French</u> line of cases, the failure to comply with only one provision rendered the convictions void, while in some cases, there was a failure to appoint a guardian ad litem as well as a failure in the required notice.

24

That waiver provision played a role in this Court's decision in Turner, where we held that the requirement of "written" notice was merely procedural. 216 Va. at 669, 222 S.E.2d at 520. In deciding whether Moore can now challenge his convictions because of the alleged failure to summons his father after the petition was filed against Moore, I also find that waiver provision significant because it allows a juvenile, with the consent of his attorney, to forego virtually all the safeguards afforded to the juvenile before a case is transferred to the circuit court.

Even more compelling is the fact that in 1977, the General Assembly repealed and reorganized the Code provisions pertaining to juveniles, and in doing so, deleted the requirement that "[i]n no case shall the hearing proceed" unless the juvenile's parent or parents are notified. Former Code § 16.1-172 (1960).[19] Similarly, in 1968, the General Assembly amended former Code § 16.1-173 (1960), removing the requirement that the "court shall, before proceeding with the hearing," appoint a guardian ad litem when no person required to be summonsed is present at

---

[19] That section was amended between 1960 and 1977 but retained the quoted language until 1977.

25

the hearing.[20]  Thus, the statutory provisions at issue in the present case no longer contained limiting language, such as that found in former Code §§ 16.1-172 and -173 (1960), that specifically prohibited the juvenile court from proceeding in the absence of notice to both parents.  Cf. Jamborsky v. Baskins, 247 Va. 506, 511 n.*, 442 S.E.2d 636, 639 n.* (1994) (giving example of limiting prohibitory language).  Instead, former Code § 16.1-263 and present Code § 16.1-264 merely required that a summons be issued to the juvenile's parents after the filing of a petition against the juvenile. Furthermore, a juvenile like Moore can waive the jurisdiction of the juvenile court and virtually all its attendant safeguards.

I believe that the majority incorrectly equates statutory provisions that are "mandatory" with those that are prerequisites to a juvenile court's exercise of its subject matter jurisdiction.  See, e.g., the majority's quotation in the present case from Moore v. Commonwealth, No. 990776, 259 Va. ___, ___ S.E.2d ___ (2000) (this day decided).  As already

---

[20] In its place, the legislature enacted language requiring that the juvenile be advised of his or her right to counsel, which is advice that must be given whether a parent is present or not.  Former Code § 16.1-173 (1968).

26

noted, the error in Turner was "a mere procedural defect," 216 Va. at 669, 222 S.E.2d at 520, although the notice requirement at issue there used the mandatory term "shall." Former Code § 16.1-176(a)(3) (1974). The mandatory nature of a requirement, standing alone, does not always make that requirement jurisdictional.

The majority concludes that the notice provision at issue in this case is mandatory, and in its view, therefore jurisdictional, because of "this Court's unswerving adherence to the nature of" the parental notice requirement with regard to juvenile proceedings. However, in doing so, the majority ignores the statutory changes, discussed above, deleting the language that prohibited the juvenile court from proceeding with a hearing until certain requirements were fulfilled. Furthermore, this Court has not, in the context of a collateral attack on a juvenile conviction, addressed the parental notice requirement at issue today since the 1977 amendments, much less "unswerving[ly] adhere[d]" to a conclusion that the present requirement is jurisdictional.

Since the juvenile court is a creature of statute, the General Assembly can modify any prerequisites for the juvenile court's exercise of its subject matter jurisdiction. See Burke v. Commonwealth, 29 Va. App. 183, 188, 510 S.E.2d 743, 746 (1999) (holding that when subject matter jurisdiction is statutorily created, General Assembly can alter rules governing

27

judicial exercise of that jurisdiction).  Thus, I conclude that what was deemed a "jurisdictional" defect in the French case and its progeny is no longer such because of the intervening changes in the language of the relevant statutory provisions.[21] Therefore, Moore cannot now raise the failure to summons his father as a basis for voiding his convictions.  See Humphreys v. Commonwealth, 186 Va. 765, 772, 43 S.E.2d 890, 894 (1947)(court's subject matter jurisdiction cannot be waived); Morrison v. Bestler, 239 Va. 166, 169, 378 S.E.2d 753, 755 (1990) (only type of jurisdiction which cannot be waived is subject matter jurisdiction).  Accordingly, under Rules 5:17(c) and 5:25, Moore has defaulted his objection to the alleged error.

---

[21] The decision of the Supreme Court of the United States in In re Gault, 387 U.S. 1 (1967), does not alter my analysis. That case, decided after this Court had decided French, stressed the content and timeliness of the constitutionally required notice.

For these reasons, I respectfully dissent and would affirm Moore's convictions.[22]

---

[22] Because I conclude that Moore had defaulted his objection to the alleged error, I need not address Code § 16.1-269.6(E) (1994).